UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

WILLIAM HASSELL,

                Plaintiff,

       v.

BRIAN FISCHER, Commissioner of the New
York State Department of Corrections (in an
individual capacity),

ANTHONY J. ANNUCCI, Acting Commissioner
of the New York State Department of Corrections
(in an individual employee),

NEW YORK STATE CORRECTIONS
EMPLOYEE JOHN DOE (fictitious name) (in an
individual capacity),

ANDREA EVANS, Chairwoman of the New
York State Board of Parole (in an individual
capacity),

TERRANCE TRACY, New York State Parole
Board Employee (in an individual capacity),

ANTHONY CONSTANTINI, New York State
Parole Officer (in an individual capacity),

JOSE BULNES, New York State Parole Officer
(in an individual capacity),

MONTY BYNUM, New York State Parole
Officer (in an individual capacity),

IRMA MACHADO, New York State Parole
Officer (in an individual capacity),

GREGORY FREEMAN, New York State Parole
Officer (in an individual capacity),

NEW YORK STATE PAROLE EMPLOYEE
JANE DOE (fictitious name) (in an individual

:   **ORDER AND OPINION**
:   **GRANTING IN PART AND**
:   **DENYING IN PART**
:   **DEFENDANTS' MOTION FOR**
:   **JUDGMENT ON THE**
:   **PLEADINGS**
:
:
:
:   13-cv-1992 (AKH)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

DOCU...
ELE... NICALLY FILED
DOC #:
DATE FILED: 4/1/15

1

capacity),                                              :
                                                        :
                        Defendants.                     :
-------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

            Plaintiff William Hassell sues employees and officers of the New York

Department of Corrections ("DOCS") and the New York Department of Parole ("Parole")

(collectively, "Defendants") for administratively adding to his sentence, and subsequently

enforcing, a term of post-release supervision ("PRS") that was not ordered by his sentencing

judge at the time of sentencing in 2002.  He also complains that Defendants requested that he be

re-sentenced by the sentencing court after he was released from custody, and that a term of PRS

was imposed on him pursuant to his re-sentencing.  Hassell asserts that these actions violated his

due process and double jeopardy rights guaranteed by the Fifth and Fourteenth Amendments to

the United States Constitution, *see* U.S. Const. amend. V; U.S. Const. amend. XIV § 1, giving

him a right to sue for damages under sections 1983 and 1988 of the Civil Rights Act. *See* 42

U.S.C. §§ 1983, 1988.  Hassell also asserts violations of the New York State Constitution. *See*

N.Y. Const. art. I, § 6 (guaranteeing due process and double jeopardy rights).

            Defendants move for judgment on the pleadings to dismiss the complaint, *see*

Fed. R. Civ. P. 12(c), on the grounds that, *inter alia*, they are entitled to qualified immunity.  For

the following reasons, Defendants' motion is denied in part and granted in part.

I.     BACKGROUND

            A.      Factual Background

            On November 21, 2002, while serving a three and a half year sentence on a prior

conviction, Hassell pleaded guilty to assault in the second degree. *See* Second Am. Compl. ¶ 19.

2

He was sentenced to an additional term of three and a half years of confinement, consecutive to his prior sentence. *See id.* The sentencing judge did not pronounce a term of PRS to follow Hassell's term of custody. *See id.* Hassell alleges that at some point after his sentencing but prior to his release, Defendants Brian Fischer, Anthony J. Annucci, Terrence Tracy, and Andrea Evans[1] formulated a plan to administratively add a PRS term to Hassell's sentence. *See id.* ¶ 26.

Hassell was conditionally released from custody on February 29, 2008, after serving six-sevenths of his custodial sentence. *See id.* ¶ 39. Hassell's release from custody was made subject to a PRS term of five years, calculated to end on March 1, 2013. *See id.* ¶¶ 33, 39. Hassell alleges that Fischer, Annucci, Tracy, and Evans "made a conscious decision" to impose the five-year PRS term upon Hassell's release even though they "knew, or should have known, that their actions violated clearly established law." *Id.* ¶¶ 27-29, 33, 45. Hassell further alleges that at the direction of Fischer, Annucci, Tracy, and Evans, several DOCS and Parole employees[2] enforced the PRS conditions.[3] *See id.* ¶¶ 35-36.

On August 31, 2008, the full term of Hassell's custodial sentence expired. *See id.* ¶ 40. On September 15, 2008, Parole informed the New York Supreme Court for New York County that Hassell required resentencing and ordered Hassell to appear in New York County Supreme Court. *See id.* ¶ 42; Defs.' Answer to Second Am. Compl., Exh. I. On December 3, 2008, New York Supreme Court Justice Rena K. Uviller re-sentenced Hassell *nunc pro tunc* to a

---

[1] Brian Fischer was the Commissioner of DOCS; Anthony J. Annucci was the Executive Deputy Commissioner and general counsel of DOCS; Terrence Tracy was an attorney at DOCS; and Andrea Evans was the Commissioner of Parole.

[2] These employees include Anthony Constantini, Jose Bulnes, Monty Bynum, Irma Machado, and Gregory Freeman, as well as other unnamed DOCS and Parole employees. *See* Second Am. Compl. ¶¶ 9-17, 35-36. The parties agree that Defendants Bulnes and Bynum were not properly served. These Defendants, therefore, are not currently represented by the New York State Attorney General's Office and do not join in the instant motion. Defendant Machado similarly is not currently represented by the New York State Attorney General's Office and does not join in the instant motion.

[3] The PRS conditions required Hassell to, *inter alia*, frequently report to Parole, remain in the state of New York absent permission to leave, permit Parole access to his person and apartment, avoid the company of individuals with a criminal record, maintain employment, submit to drug testing, and pay a monthly "supervision fee" of 30 dollars. *See* Second Am. Compl. ¶ 34.

3

custodial term of three and a half years, which he already had completed, and a five year PRS term. *See* Am. Compl. ¶ 43. Hassell appealed to the New York Appellate Division, First Department, which summarily affirmed Justice Uviller's order. *See People v. Hassell*, 66 A.D.3d 575 (1st Dep't 2009). On June 17, 2010, the New York Court of Appeals reversed the Appellate Division. The Court of Appeals held that the Supreme Court's resentencing of Hassell nine months after his release from custody violated the protections guaranteed by the Double Jeopardy Clause of the federal Constitution. *See People v. Hassell*, 14 N.Y.3d 925, 926 (2010). Immediately following the New York Court of Appeals' decision, Hassell was released from PRS. *See* Second Am. Compl. ¶ 44.

### B.    Post-Release Supervision in New York

In 1998, the New York Legislature passed a sentencing reform act, commonly referred to as "Jenna's Law," which provided determinate sentences for violent felony offenders, eliminated parole for those offenders, and mandated that determinate sentences be followed by terms of PRS. *See* 1998 N.Y. Laws Ch. 1, § 15 ("Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision.") (codified at N.Y. Penal Law § 70.45(1) (McKinney 2004)); *see also People v. Catu*, 4 N.Y.3d 242, 244 (2005). Following the enactment of Jenna's Law, because PRS was presumed automatic, some judges did not state during sentencing that the defendant's sentence included a term of PRS. In some cases, the defendants' commitment orders similarly omitted any reference to a PRS term. Nonetheless, DOCS and Parole officials imposed terms of PRS administratively. Several intermediate courts initially upheld the practice, *see, e.g., Matter of Deal v. Goord*, 8 A.D.3d 769, 770 (3d Dep't 2004) (denying Article 78 petition seeking prohibition of administratively-imposed PRS term because respondents were simply "enforcing a statutorily-required part of petitioner's sentence"),

4

but, in 2005, the New York Court of Appeals ruled that due process required a defendant

pleading guilty to be aware of the mandatory PRS term at the time of the plea. *See Catu*, 4

N.Y.3d at 245. Thus, the failure of the sentencing court to advise pleading defendants that they

would be subject to a PRS term after their custodial sentence invalidated their plea, even though

Jenna's Law required a PRS term to follow a determinate sentence. *See id.*

   In June 2006, in *Earley v. Murray*, the Second Circuit Court of Appeals addressed

the issue in the context of a petition for habeas corpus. *See* 451 F.3d 71 (2d Cir. 2006). Sean

Earley had pleaded guilty in February 2000 to attempted burglary in the second degree and was

sentenced to a six-year custodial term. *See id.* at 73. The judge did not mention a term of PRS at

sentencing, nor include it in the written judgment or order of commitment following sentencing.

*See id.* However, DOCS officials, following common practice, administratively added a five-

year PRS term some time during Earley's confinement. *See id.* After being released from prison

in 2004, Earley violated the conditions of his PRS and was reincarcerated. *See id.* at 75. He then

filed a petition in federal court seeking, by writ of habeas corpus, to be released from an invalid

custodial sentence imposed for violating invalid PRS conditions. *See id.* at 73.

   The Second Circuit held in *Earley* that "[t]he judgment of the court establishes a

defendant's sentence, and that sentence may not be increased by an administrator's amendment."

451 F.3d at 75 (citing *Hill v. United States ex rel. Wampler*, 290 U.S. 460 (1936)). Thus, the

Second Circuit held that an administrative modification of a sentence violated "clearly

established federal law" under the standard for habeas review provided by the Anti-Terrorism

and Effective Death Penalty Act. *Id.* at 77.[4] However, the Court also held that while the

---

[4] The Second Circuit acknowledged a factual distinction between *Wampler* and *Earley*. In *Wampler*, the defendant was sentenced to 18 months in prison and a \$5,000 fine. *See Wampler*, 298 U.S. at 461-62. In addition to the pronounced sentence, the county clerk added an additional requirement that the defendant remain in custody until the fine was paid. *See id.* This additional requirement was within the discretion of the sentencing judge, whereas in

5

sentence was invalid, the invalidity could be cured by a re-sentence of a defendant by the

sentencing court pursuant to New York Criminal Procedure Law § 440.40. *See id.* at 76-77

("Our ruling is not intended to preclude the state from moving in New York courts to modify

Earley's sentence to include the mandatory PRS term."). As discussed in greater detail below,

the Second Circuit subsequently held in 2013 that, for purposes of qualified immunity, the

decision in *Earley* "clearly established" the unconstitutionality of administratively adding PRS

conditions to a prisoner's sentence that were not pronounced by the sentencing judge at the time

of sentence. *See Vincent v. Yelich*, 718 F.3d 157, 160 (2d Cir. 2013).

   In April 2008, the New York Court of Appeals addressed the issue of whether

administratively added PRS terms violated the New York Criminal Procedure Law and whether

resentencing could cure such illegal sentences. *See People v. Sparber*, 10 N.Y.3d 457 (2008). In

*Sparber*, the sentencing judges in several cases had failed to advise convicted defendants that his

or her sentence included a PRS term. New York Criminal Procedure Law § 70.45(1) at the time,

although requiring that a term of PRS follow a determinate sentence, did not provide *how* or

*when* that term was to be imposed. New York Criminal Procedure Law § 380.20 and §

380.40(1), however, provided that courts "must pronounce sentence in every case where a

conviction is entered" and that, generally, "[t]he defendant must be personally present at the time

sentence is pronounced." *Id.* at 469. The New York Court of Appeals in *Sparber* concluded that

the sentencing courts had to pronounce the PRS component of a sentence, and that the "sole

remedy" for the courts' failure to do so is "to vacate the sentence and remit for a resentencing

---

*Earley* the five-year PRS term was statutorily mandated. *See Earley*, 451 F.3d at 74-75. Nonetheless, the Second Circuit concluded that this factual distinction was irrelevant because the Supreme Court in *Wampler* went on to hold broadly that the sentence imposed by the sentencing judge controlled, regardless of whether omitted conditions or punishments were discretionary or mandatory. *See Earley*, 451 F.3d at 75; *but see Maciel v. Cate*, 731 F.3d 928, 934-35 (9th Cir. 2013) ("Another reason why the California courts were reasonable in distinguishing *Wampler* is that it expressly applies only to discretionary sentencing terms rather than the statutorily mandated requirements at issue here.").

hearing so that the trial judge can make the required pronouncement." *Id.* at 469-71; *see also*

*Matter of Garner v. N.Y. State Dep't of Corr. Servs.*, 10 N.Y.3d 358 (2008) (prohibiting DOCS,

pursuant to an Article 78 proceeding, from administratively imposing PRS terms not pronounced

at sentencing).

In June 2008, in response to these rulings, the New York State Legislature

expressly provided for resentencing inmates whose PRS terms were not announced at the initial

sentencing. New York Correction Law § 601-d instructed DOCS to notify the sentencing court

of the court's prior failure to pronounce a PRS term for an inmate in custody, and the time within

which an inmate must be resentenced. *See* N.Y. Correct. Law § 601-d. The Legislature also

enacted New York Penal Law § 70.85 to allow the resentencing court either to add a term of

PRS, or to re-impose the original determinate sentence without a PRS term if the district attorney

consented.[5] N.Y. Penal Law § 70.85. The Legislature also clarified that the term of PRS

following a determinate sentence must be verbally pronounced at the same time as the

determinate sentence. *See* N.Y. Penal Law § 70.45 ("When a court imposes a determinate

sentence it shall in each case state not only the term of imprisonment, but also an additional

period of post-release supervision as determined pursuant to this article."). Following the

enactment of this legislation, DOCS began referring inmates for resentencing. The referrals

---

[5] The section provides in its entirety:

> This section shall apply only to cases in which a determinate sentence was imposed
> between September first, nineteen hundred ninety-eight, and the effective date of this
> section, and was required by law to include a term of post-release supervision, but the
> court did not explicitly state such a term when pronouncing sentence. When such a case
> is again before the court pursuant to section six hundred one-d of the correction law or
> otherwise, for consideration of whether to resentence, the court may, notwithstanding any
> other provision of law but only on consent of the district attorney, re-impose the
> originally imposed determinate sentence of imprisonment without any term of post-
> release supervision, which then shall be deemed a lawful sentence.

N.Y. Penal Law § 70.85. This provision allowed re-sentencing courts to avoid vacating pleas that were unlawful
under the New York Court of Appeals' decision in *Catu*, 4 N.Y.3d 242.

included both inmates who were still in custody and those who had been released after

completing their initial custodial terms. *See, e.g., People v. Lingle*, 16 N.Y.3d 621, 636-39

(2011) (Ciparick, J., dissenting) (discussing both circumstances).

In *People v. Williams*, 14 N.Y.3d 198 (2010), the New York Court of Appeals, in

reviewing five cases involving post-custody resentencing, put a stop to the practice of

resentencing inmates after they had been released.[6]  The Court of Appeals held that the

resentencing of a defendant *after his or her release from prison* violates the Double Jeopardy

Clause of the United States Constitution because, at that point, the defendant has "a legitimate

expectation in the finality of a sentence." *Id.* at 217 ("[I]n a case where PRS was not formally

pronounced by the sentencing court pursuant to CPL 380.20, we hold that the Double Jeopardy

Clause prohibits a court from resentencing the defendant to the mandatory term of PRS after the

defendant has served the determinate term of imprisonment and has been released from

confinement by the DOCS.").  In dicta, the Court of Appeals acknowledged that resentencing to

a term of PRS after completion of a determinate sentence would be otherwise lawful, for courts

have the "inherent authority" to correct illegal sentences, and no statute barred such

resentencing. *See id.* at 212; N.Y. Correct. Law § 601-d; N.Y. Penal Law § 70.85.

## II.    STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In deciding a Rule 12(c) motion, a

court "applies the same legal standard as that applicable to motions to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6)." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp.

2d 524, 525 (S.D.N.Y. 2013).  A motion to dismiss should be granted if the complaint "fails to

---

[6] In some cases the defendants were resentenced after being re-incarcerated following a violation of the
administratively-imposed PRS term. *See Williams*, 14 N.Y.3d at 209-12.

state a claim upon which relief can be granted." Fed .R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2). The court accepts the non-moving party's factual allegations as true and draws all reasonable inferences in its favor. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).

## III.   DISCUSSION

### A.   Qualified Immunity

Qualified immunity "protects public officials performing discretionary functions from personal liability in a civil suit for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As an affirmative defense, defendant officials bear the burden of proof. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

A public official sued in his or her individual capacity is entitled to qualified immunity from a claim for damages if either (1) the alleged official conduct was not prohibited by law, *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998), or (2) the conduct was prohibited by law but the plaintiff's right not to be subjected to such conduct was not "clearly established at the time it was taken," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal quotations omitted). The test is an objective one. Thus, "[a] right is 'clearly established' when the contours of the right are sufficiently clear that a reasonable official would understand that

9

what he [or she] is doing violates that right." *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Absent "extraordinary circumstances," "[i]f the law was clearly established, the immunity

defense ordinarily should fail, since a reasonably competent public official should know the law

governing his [or her] conduct." *Harlow*, 457 U.S. at 818-19.

Defendants' entitlement to qualified immunity, therefore, turns on whether and

when the rights that Hassell invokes were "clearly established." *Harlow*, 457 U.S. at 818.

Hassell alleges that Defendants knowingly violated his constitutional rights on two separate

occasions. First, Defendants ordered that Hassell should be released from custody on February

29, 2008 subject to PRS conditions, even though the sentencing court had not ordered PRS

conditions, and he alleges that the imposition of such conditions violated his right to due process

of law. *See* Second Am. Compl. ¶¶ 27-29, 33, 35-36. Second, Defendants caused Hassell to be

resentenced to a term of PRS on December 3, 2008, in violation of the Double Jeopardy Clause

of the State and Federal Constitutions. *See id.* ¶ 43. Hassell remained subject to such conditions

until June 17, 2010, when the New York Court of Appeals vacated his resentencing. *See id.* ¶¶

42-47. Plaintiff's allegations of the two categories of constitutional violations implicate two

different sets of rights and two relevant periods of time.

### 1. Defendants' Administrative Imposition and Enforcement of PRS Conditions between February 29, 2008 and Hassell's Resentencing on December 3, 2008

The Second Circuit Court of Appeals held in June 2006, in *Earley v. Murray*, that

a state prisoner may not be subjected to an administratively imposed PRS term not pronounced at

sentencing. *See* 451 F.3d 71. The Second Circuit Court of Appeals reinforced that ruling in

*Vincent v. Yelich*, holding that *Earley* "clearly established" that constitutional right. 718 F.3d

157, 160 (2d Cir. 2013) ("[W]e conclude that *Earley I* itself, decided on June 9, 2006, did clearly

establish the unconstitutionality of the administrative imposition or enforcement of postrelease conditions that were not judicially imposed."). Thus, after *Earley*, state officials who imposed PRS after the sentencing court had failed to do so, are not entitled to qualified immunity unless, as *Earley* added, they take reasonable and prompt steps to remit an inmate to the sentencing court for resentencing. *See id.* at 173-74 (holding that Anthony J. Annucci was not entitled to qualified immunity as a matter of law).[7]

The plaintiffs in *Vincent* had been convicted of state crimes and had been released from their custodial sentences at various times between 2002 and 2007. *See id.* at 161. Either during the plaintiffs' custodial terms or after their release, the defendants in *Vincent* imposed PRS conditions upon them, even though the sentencing court had failed to do so, and their orders of commitment did not mention PRS. *See id.* In most cases, DOCS imposed the PRS terms prior to *Earley*, but continued to enforce the conditions after *Earley* had declared the practice unconstitutional, without remitting the cases to the sentencing courts for resentencing.[8] *See Vincent*, 718 F.3d at 176. One *Vincent* plaintiff had his PRS term added after the Second Circuit decided *Earley*. *See id.* at 171. Plaintiffs sued the relevant DOCS and Parole officials in their individual capacities, including Brian Fischer and Anthony J. Annucci, the Commissioner and Executive Deputy Commissioner of DOCS. *See id.* Their complaints alleged that the defendant officials knew that plaintiffs had not been sentenced to PRS terms by the sentencing courts, but nonetheless "unlawfully and unconstitutionally promulgated a DOCS policy of administratively adding a five-year PRS period to prisoners' records." *Id.* at 164.

The Second Circuit Court of Appeals held that since the conduct of imposing, or enforcing, PRS persisted *after* the Second Circuit decided *Earley* in 2006, Defendant Anthony J.

---

[7] Anthony J. Annucci is the same person who is a defendant in the case before me.
[8] Some, but not all, of the *Vincent* plaintiffs had been reincarcerated after violating administratively added PRS conditions. *See Vincent*, 718 F.3d at 161.

11

Annuci was not entitled to qualified immunity.[9] *See id.* at 173-74. Where the complaints alleged

that the PRS term was imposed prior to June 2006, the Court held that plaintiffs had sufficiently

alleged that they "suffered the consequences of PRS even following [the] decision in *Earley I.*"

*Id.* at 175. The Court noted that Annucci had testified that he did not immediately implement a

resentencing initiative consistent with *Earley* in 2006. *See id.* at 174-75. While Annuci had

begun a policy of identifying prisoners in need of resentencing by 2007, there was no evidence

that DOCS took any steps to recommend them for resentencing. *See id.* The Court

acknowledged the possibility that DOCS and Parole took reasonable, and timely, steps to do so,

but denied qualified immunity at the early stage of a motion to dismiss, because the facts to

establish immunity had not yet been developed. *See id.*[10]

   In the case before me, Hassell's allegations against defendants Fischer, Annucci,

Tracy, and Evans, for the period prior to his resentencing on December 3, 2008, are similar to the

allegations in *Vincent*. Although the record does not reflect when DOCS ordered PRS to be

added to Hassell's sentence, and therefore whether that action occurred before or after the

Second Circuit's decision in *Earley*, Hassell's complaint sufficiently alleges that Defendants

caused Hassell to continue to be subject to PRS conditions in 2008, more than two years *after*

*Earley*. *See* Second Am. Compl. ¶¶ 39-43 (alleging that Hassell was released on February 29,

2008 subject to PRS, and that he was not resentenced until December 3, 2008, 9 months later).

Hassell also alleges that Defendants knew or should have known prior to February 29, 2008, and

after, that an administratively added PRS term without a judicial resentencing violated "clearly

established" federal law. *See id.* ¶¶ 26-29, 45-47. Although Defendants Fischer, Annucci,

---

[9] The Court of Appeals did not address the allegations against the other defendants because the appellants had failed to preserve their claims against them on appeal. *See Vincent*, 718 F.3d at 174-75.

[10] The Supreme Court recently denied the defendant's petition for a writ of certiorari. *See Annucci v. Vincent*, No. 14-360, — S. Ct. —, 2015 WL 132971 (Jan. 12, 2015).

Tracy, and Evans could have taken timely steps to remit Hassell to the sentencing court for resentencing, and such steps under *Earley* could confer a qualified immunity, nothing in the record supports such a defense. Defendants have not yet answered the Complaint.

Defendants argue that the Second Circuit's decision in *Scott v. Fischer* in 2010 supports their entitlement to qualified immunity. However, in *Scott*, the plaintiff failed sufficiently to allege any actionable post-*Earley* conduct by the defendants. *See* 616 F.3d 100 (2d Cir. 2010). Scott was sentenced in July 1999 and conditionally released, subject to an administratively imposed PRS term, on July 1, 2002. *See id.* at 103. In March 2004, a Parole employee recommended the issuance of a warrant after Scott violated the conditions of her PRS term. *See id.* Scott was arrested on the warrant in New Jersey in October 2006 and extradited to New York, where she was sentenced in January 2007 to an 18-month term of imprisonment for the violations. *See id.*

After a federal court granted her habeas petition, Scott filed suit under 42 U.S.C. § 1983 against the Parole officer who requested the warrant in 2004, and against DOCS officials who had adopted and approved the policy of administratively adding PRS conditions. *See id.* at 103-04. The District Court dismissed the complaint on the basis of qualified immunity, concluding, first, that the law governing administrative imposition of PRS was not clearly established prior to the Second Circuit's June 2006 decision in *Earley* and, second, that Scott had failed to allege sufficient post-*Earley* personal involvement by the defendants. *See id.* at 104. The Second Circuit affirmed, agreeing that "it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Id.* at 107. Furthermore, Scott failed to allege "affirmative actions" taken by defendants after *Earley* was decided, and thus there were no "facts giving rise to a clearly

13

established affirmative legal obligation on the part of the DOC defendants." *Id.* at 109.

Furthermore, Scott did not allege that the Defendants failed to seek her resentencing, or that they

were aware that her PRS term had been added administratively. *See id.* at 110.

*Scott* left open the question whether, for purposes of qualified immunity, *Earley*

"clearly established" the unconstitutionality of the administrative imposition of PRS not

pronounced at sentence. *See id.* at 107 ("Whether *Earley* itself sufficed clearly to establish the

unconstitutionality of administratively imposed PRS for a reasonable New York State

correctional official may be open to question . . . ."). Thus, defendants argue that neither *Earley*

nor *Scott* bar their entitlement to qualified immunity for following New York State law. *Vincent*,

however, clearly does so.

In *Vincent*, decided in 2013, three years after *Scott*, the Second Circuit

"answer[ed] *Scott*'s question in the affirmative." *Vincent*, 718 F.3d at 169. *Vincent* denied

qualified immunity because the defendants "knew that plaintiffs had not been sentenced to PRS

by a sentencing court" but nonetheless caused PRS conditions to be imposed even after *Earley*

held that "DOCS-imposed PRS . . . deprive[d] plaintiff[s]" of their constitutional rights. *Vincent*,

718 F.3d at 172, 176.

In the case at bar, Hassell alleges that DOCS knowingly enforced the PRS

conditions through 2008, two years after the Second Circuit decided *Earley*. Thus, like the

complaints in *Vincent*, and in contrast to those in *Scott*, Hassell has alleged sufficient post-*Earley*

conduct. While *Earley* states that an illegal sentence may be cured by resentencing, there is

insufficient evidence at this stage to determine whether the defendants took reasonable steps,

within a reasonable amount of time, to have Hassell resentenced. Thus, Hassell has sufficiently

14

alleged that DOCS and Parole failed to discharge their affirmative duty to promptly recommend
Hassell for resentencing. *See* Second Am. Compl. ¶¶ 23-24, 26-29, 33, 35-36, 39, 45.

Second, Defendants argue that it was reasonable for DOCS and Parole officials to
follow New York Penal Law § 70.45(1) mandating the addition of PRS terms to determinate
sentences even though the Second Circuit Court of Appeals held in *Earley* that such practice
violated the federal Constitution. *See* Defs.' Mem. Law Supp. Mot. Judgment Pleadings ("Defs.'
Br.") at 14-15. The Second Circuit categorically rejected this argument in *Vincent*. Although, in
general, "state officials are entitled to rely on a presumptively valid state statute until and unless
the statute is declared unconstitutional," *Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir.
2005), "that presumption cannot be relied upon once the federal court of appeals for the circuit in
which the officials operate has ruled that the exact conduct of the official, undertaken on the
basis of the state statute, violates federal law." *Vincent*, 718 F.3d at 170. The square holding of
*Vincent* is that defendants' purported reliance on state law in direct contradiction to "clearly
established" federal law does not entitle them to qualified immunity.

Third, Defendants argue that they could not have legally sought resentencing prior
to the passage of New York Correction Law § 601-d in June 2008. The same argument was
made, and rejected, in *Vincent*. There, the Second Circuit held:

> [W]e think it clear that DOCS, which (a) unconstitutionally imposed PRS,
> (b) was custodian of the records in which PRS was imposed and from
> which PRS was required to be excised (in the absence of appropriate
> resentencing), and (c) resumed custody of persons who violated the
> unconstitutionally imposed conditions and were penalized for those
> violations by reimprisonment, had an obligation to at least attempt to cease
> its administrative and custodial operations that had been held to violate
> federal law.

*Vincent*, 718 F.3d at 172-73. The Second Circuit held that, because there was no evidence in the record "that Annucci took prompt action in light of *Earley I*," he was not entitled to qualified immunity. *Id.* at 173.

Even though a statutory procedure for resentencing defendants with defective PRS terms added to their sentences was not expressly provided until the passage of New York Correction Law § 601-d in June 2008, the sentencing court had inherent authority to remedy defective sentences at all relevant times. *See People v. Williams*, 14 N.Y.3d 198, 212 (2010) ("Our precedent has long recognized that courts have the inherent authority to correct illegal sentences."); *see also* N.Y. Crim. Proc. Law § 440.40(1) ("At any time not more than one year after the entry of a judgment, the court in which it was entered may, upon motion of the people, set aside the sentence upon the ground that it was invalid as a matter of law."). Thus, as the Court of Appeals stated in *Earley*, "when DOCS discovered the oversight made by [the] sentencing judge, the proper course would have been to inform the state of the problem" so that "[t]he state then could have moved to correct the sentence through a judicial proceeding." 451 F.3d at 76. There is no evidence at this stage that Defendants took any such action prior to September 15, 2008, over 27 months after the Second Circuit's decision in *Earley* and over 6 months after PRS conditions were unconstitutionally-imposed on Hassell.[11]

While I deny Defendants' motion as to Fischer, Annucci, Tracy, and Evans, I hold that the remaining Defendants are entitled to qualified immunity. Hassell alleges that these various lower level DOCS and Parole employees, at the direction of Defendants Annucci, Fischer, Tracy, and Evans, enforced the conditions imposed by Hassell's administratively added

---

[11] New York Correction Law § 601-d itself alludes to other statutory vehicles for resentencing. *See* N.Y. Correction Law § 601-d(5) ("The court shall promptly notify the agency that referred a designated person whenever it (a) resentences the defendant to a sentence that includes a term of post-release supervision; or (b) determines that it will not resentence the defendant under this section *or otherwise*.") (emphasis added).

16

PRS term. *See* Second Am. Compl. ¶¶ 35-37. However, even reading the Second Amended Complaint liberally, as a Court must do at this stage, it lacks any allegation that the lower level Parole and DOCS employees knew, or should have known, that Hassell's term of PRS had been administratively imposed but not announced at sentence or resentence. *See id.* ¶ 35-37. There is no allegation that the lower level employees possessed any discretionary authority or played any role in the purported decision to impose and enforce administratively-added PRS terms after the Second Circuit's decision in *Earley. See id.* Accordingly, I hold that it was not objectively unreasonable for Defendants Constantini, Freeman, and Doe to continuing enforcing the PRS conditions imposed on Hassell pursuant to their duties as employees of DOCS and Parole. *See Scott v. Fischer*, No. 07 Civ. 11303, 2009 WL 928195, at *5-6 (S.D.N.Y. Mar. 30, 2009) (holding that Parole officer who enforced conditions of administratively imposed PRS was entitled to qualified immunity even if conduct occurred after the Second Circuit's decision in *Earley* because the officer "had no way of knowing" the PRS term was improperly added to defendant's sentence), *aff'd*, 616 F.3d 100 (2d Cir. 2010); *see also Arizona v. Evans*, 514 U.S. 1, 15-16 (1995) (holding that a police officer "was acting objectively reasonably when he relied upon the police computer record," even though the outstanding warrant on which the officer arrested defendant was the result of a clerical error); *Caldarola v. Calabrese*, 298 F.3d 156, 166 (2d Cir. 2002) ("We cannot expect an officer to question the judgment of his superiors, especially when, as here, he has no basis for doing so."). The claims against these defendants are dismissed.

> **2. Defendants' Imposition and Enforcement of PRS Conditions Pursuant to Resentencing between December 3, 2008 and June 17, 2010**

17

Hassell alleges that Defendants' enforcement of PRS conditions following his resentencing on December 3, 2008 violated the double jeopardy protections guaranteed by the New York and federal constitutions. *See* Second Am. Compl. ¶¶ 25, 40-47, 64, 65; U.S. Const. amend. V; N.Y. Const. Art. I, § 6. He relies principally on the New York Court of Appeals' decision in *People v. Williams*, which held that the resentencing of a defendant pursuant to New York Correction Law § 601-d *after* the defendant's release from confinement was an unconstitutional violation of the double jeopardy clause of the United States Constitution because resentencing after release contradicts a reasonable expectation of finality. *See* 14 N.Y.3d 198, 217 (2010) (holding that "after release from prison, a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence"). The Second Circuit, however, has ruled that prior to the New York Court of Appeals' February 2010 decision in *Williams*, public officials could reasonably rely upon New York Correction Law § 601-d in remitting a defendant for resentencing. *King v. Cuomo*, 465 F. App'x 42, 45 (2d Cir. 2012), *aff'g* No. 08 Civ. 6058, 2011 WL 13944 (S.D.N.Y. Jan. 4, 2011). In doing so, public officials did not violate a clearly established federal right, and are entitled to qualified immunity and the dismissal of the complaints against them:

> No federal or state court has held that such resentencing violates double jeopardy's reasonable expectation of finality, except in circumstances where offenders have completed their determinate terms and been released from custody. Even as to those offenders, no court reached that conclusion until the New York Court of Appeals decided *People v. Williams* in 2010. Thus, because neither clearly established principles of double jeopardy nor due process prohibited defendants from administratively imposing legislatively mandated PRS terms before 2006, or from obtaining judicial resentencing of offenders already released from their determinate prison terms before 2010, the district court correctly granted dismissal on the ground of qualified immunity.

18

*Id.* at 45.

Here, Defendants remitted Hassell for resentencing on September 15, 2008,
pursuant to New York Correction Law § 601-d. *See* Second Am. Compl. ¶ 42; *People v.
Hassell*, 14 N.Y.3d 925 (2010). On December 3, 2008, Justice Uviller resentenced Hassell to a
PRS term *nunc pro tunc*. *See* Second Am. Compl. ¶ 43; *People v. Hassell*, 14 N.Y.3d 925
(2010). It is not disputed that Defendants imposed PRS conditions pursuant to Justice Uviller's
order and before the New York Court of Appeals held in *Williams* that the resentencing violated
the Double Jeopardy Clause of the United States Constitution. I hold that the Defendants'
conduct was objectively reasonable at the time. *See King*, 465 F. App'x 42. Accordingly, the
Defendants are entitled to qualified immunity for the period between December 3, 2008 and June
17, 2010, when Hassell was released. Hassell's claim for that period is dismissed.

## B.     Defendants' Remaining Arguments

### 1.     The Eleventh Amendment Does Not Bar Hassell's Claims

Defendants argue that Hassell's claims, seeking money damages against state
officials acting in their official capacity, are barred by the Eleventh Amendment. *See Ying Ging
Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is
sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and
the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").
Although Hassell styled his Complaint against Defendants in their individual capacities, *see*
Second Am. Compl. at 2, Defendants argue that New York is the "real substantial party in
interest" because Defendants were "simply acting as [New York Penal Law] § 70.45, a
legislative enactment, required." Defs.' Br. at 22. But New York Penal Law § 70.45 did not
expressly *require* DOCS or Parole officials to add, or enforce, PRS conditions to Hassell's

19

sentence; it simply provided that determinate sentences are to include PRS terms. *See* N.Y.

Penal Law § 70.45 ("Each determinate sentence also includes, as a part thereof, an additional

period of post-release supervision."). Even assuming the Defendants were merely complying

with state law, the Second Circuit has held that compliance with state law does not entitle

officials to immunity for actions taken in violation of "clearly established" federal law. *See*

*Vincent*, 718 F.3d at 170 (noting that presumption of state statute's validity "cannot be relied

upon once the federal court of appeals for the circuit in which the officials operate has ruled that

the exact conduct of the official, undertaken on the basis of the state statute, violates federal

law."). The Eleventh Amendment is not a defense to Hassell's claims against Defendants in

their individual capacity.

### 2. Hassell Has Sufficiently Alleged Personal Involvement of Defendants Fischer, Annucci, Tracy, and Evans

Defendants argue that Hassell fails to state a claim for relief because his

complaint lacks allegations of personal involvement on the part of the Defendants. *See* Defs.'

Br. at 23. It is firmly established that "personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v.*

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted). The personal involvement

of a defendant occupying a supervisory position may be established in several ways:

> The defendant may have directly participated in the infraction .... A
> supervisory official, after learning of the violation through a report or
> appeal, may have failed to remedy the wrong .... A supervisory official
> may be liable because he or she created a policy or custom under which
> unconstitutional practices occurred, or allowed such a policy or custom to
> continue .... Lastly, a supervisory official may be personally liable if he
> or she was grossly negligent in managing subordinates who caused the
> unlawful condition or event ....

20

*Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986); *see also Vincent*, 718 F.3d at 173 ("A supervisory official may be liable in an action brought under § 1983 if he exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.").

Hassell has sufficiently pleaded the personal involvement of the Defendants. The Complaint alleges that Fischer, Annucci, Tracy, and Evans, as high-ranking officials in DOCS and Parole, "formulated a plan to administratively add post-release supervision to the Plaintiff's sentence." Second Am. Compl. ¶ 26.[12] He alleges that each Defendant "individual[ly] or acting together—intentionally increased the Plaintiff's sentence when they added a five year period of post-release supervision." *Id.* ¶ 29. Further, Hassell alleges that each Defendant "knew, or should have known, that their actions violated clearly established federal law," *id.* ¶ 45, and that Fischer, as the former DOCS Commissioner, had an obligation to refer Hassell for resentencing, *see* Second Am. Compl. ¶ 23. These allegations are substantially similar to those alleged and held sufficient in *Vincent*. *See* 718 F.3d at 164. Accordingly, I hold that Hassell's Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 663. Defendants' motion to dismiss on this ground is denied.

### 3. The Court Lacks Jurisdiction Over Hassell's State Law Claims

Hassell also brings various claims under New York state law. *See* Second Am. Compl. ¶¶ 61-69. However, a federal court cannot exercise jurisdiction over pendent state law claims over which a state court lacks jurisdiction. *See Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) ("If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes

---

[12] The Court provided Defendants with a sufficient opportunity to identify all DOCS and Parole personnel who were the decision makers with respect to Hassell's administratively-added PRS term and resentencing. No different names were provided.

21

of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court."). New York Correction Law § 24 provides that New York courts lack jurisdiction over claims for money damages brought against DOCS and Parole officials in their personal capacities arising from conduct within the scope of their employment.[13] *See* N.Y. Correction Law § 24. The Second Circuit has held that this provision prevents federal courts from exercising pendent jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. § 1983. *See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) ("This provision, by its plain terms, precludes the assertion of claims against corrections officers in any court, including the federal courts."). Hassell brings state law claims for money damages against various DOCS and Parole officials in their personal capacity for actions taken within the scope of their employment. *See* Second Am. Compl. ¶¶ 6-69. Because such claims would be barred in New York state courts, this Court equally lacks jurisdiction over the claims.[14] Accordingly, Hassell's state law claims are dismissed. The federal claims, however, are unaffected and continue to stand, consistent with this Order and Opinion.

---

[13] New York Correction Law § 24 provides in pertinent part:

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correction Law § 24.

[14] In *Haywood v. Drown*, the United States Supreme Court ruled that, to the extent New York Correction Law § 24 precluded plaintiffs from maintaining a federal cause of action under 42 U.S.C. § 1983 against DOCS officials in New York Supreme Court, it violated the Supremacy Clause of the federal Constitution. *See* 556 U.S. 729, 740 (2009) ("We therefore hold that, having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse door to *federal* claims that it considers at

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion is DENIED with respect to Hassell's claims against Defendants Fischer, Annucci, Evans, and Tracy for the period between February 29, 2008 (the date when PRS conditions were imposed) and December 3, 2008 (the date of Justice Uviller's re-sentencing), and GRANTED with respect to the period between December 3, 2008 and June 17, 2010 (the date when the PRS conditions were removed). The motion is GRANTED with respect to Defendants Constantini, Freeman, and Doe (the "Dismissed Defendants"), and the claims against them are dismissed. The motion is GRANTED with respect to Hassell's state law claims. The Clerk shall enter judgment dismissing the Complaint against the Dismissed Defendants, with costs in favor of the Dismissed Defendants and mark the motion (Doc. No. 62) terminated.

Hassell shall file an Amended Complaint by April 17, 2015, consistent with this Order and Opinion. Defendants' Answer shall be filed by April 30, 2015, also consistent with this Order and Opinion. The parties shall appear for a status conference on May 8, 2015, at 10:00 a.m., with a case management plan to regulate further proceedings.

SO ORDERED.

Dated:      New York, New York
            April 1, 2015

                                                    ALVIN K. HELLERSTEIN
                                                    United States District Judge

---

odds with local policy.") (emphasis added). The decision does not, however, prevent New York Correction Law § 24 from stripping New York state courts of jurisdiction over a plaintiff's analogous *state law* claims against DOCS officials. Thus, the Second Circuit's holding in *Baker v. Coughlin*—that federal courts cannot exercise pendent jurisdiction over state law claims that a plaintiff could not bring in state court—is unaffected by the *Haywood* decision. *Accord May v. Donneli*, No. 06 Civ. 437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) ("A claim brought pursuant to a state law does not implicate the Supremacy Clause, and therefore, the *Haywood* decision does not affect the question of whether this Court has proper jurisdiction to hear this pendent state law claim.").